## MYERS et al. v. LOUISIANA & A. RY. CO.
## No. 519.

District Court, W. D. Louisiana, Shreveport Division.

Feb. 6, 1933.

See, also, 7 F. Supp. 97.

Barnette & Roberts, of Shreveport, La., for complainants.

Burford & White, of Shreveport, La., for respondents.

DAWKINS, District Judge.

Plaintiff C. P. Myers, a resident of Caddo parish, La., brings this suit individually, as an employee in the capacity of a conductor, and as the general chairman of the Order of Railway Conductors, and the petition further recites that it is by "all of the conductors of the L. & A. lines, who are members of the Order of Railway Conductors." It alleges that the defendant is a corporation, under the laws of Delaware, doing business in the state of Louisiana; that Myers retains his rights as a conductor on said lines; that in his official capacity he is authorized to represent the order and its members in all disputes and grievances with the Railway Company; that he has made many requests for conferences, which the defendant has refused and will not recognize him as the representative of said order. The petition alleges two specific instances in which the conferences were requested by letters dated September 23, 1932, copies of which, with the replies of defendant, are attached to the petition, as well as copies of three other letters demanding such conferences, to which the petition alleges no reply was made. It further alleges that prior to these particular instances numerous requests had been made for conferences with respect to other matters, which had been refused or ignored. It is charged that by thus refusing to deal with petitioner as the proper representative of the Order of Railway Conductors, and through influence, coercion, and discriminatory dealings with the men, the officers of the company have repeatedly attempted to have the said Myers removed or displaced as general chairman and to have some one succeed him that the company could control.

The petition further alleges as follows:

"XIV. That on many occasions the defendant, the Louisiana and Arkansas Railway Company, through its officers and agents has attempted to influence its conductors, your petitioners, in their self-organization, and in the choice of their representatives and the general conduct of their affairs and that it has even attempted to bring about friction among the members of the Order of Railway Conductors in the attempt to break down the organization.

"XV. That the continued practice of the defendant, the Louisiana and Arkansas Railway Company, in refusing to meet petitioner C. P. Myers as the duly designated and authorized representative of the conductors of the said Louisiana and Arkansas Lines in conference on disputes and claims affecting the rates of pay and/or working conditions has caused petitioners irreparable injury, and the further continuance of the arbitrary action of defendant in refusing to recognize and to meet in conference petitioner C. P. Myers,

General Chairman representing the conductors, will amount to further irreparable injury, for which there is no adequate remedy at law, which irreparable injury complained of is the deprivation of representation rights.

"XVI. That the defendant, the Louisiana and Arkansas Railway Company, by its arbitrary and unlawful action in refusing to meet the duly authorized and designated representative of the conductors, has influenced or attempted to influence, interfere with and coerce the conductors in their designation of representatives, 'and has by said unlawful action brought about a condition whereby petitioner C. P. Myers' can be of no service to his organization, which is composed of the petitioners herein, because of his inability to secure conference and ultimate settlement on disputes and claims which affect petitioners; and that the position of General Chairman can be no longer maintained by petitioner C. P. Myers if the defendant is permitted to arbitrarily decline to meet him in his representative capacity.

"XVII. That petitioner C. P. Myers has been elected General Chairman by referendum vote as above alleged, and that the term of office will expire January 31, 1935 unless sooner dismissed because of his inability to be of service to the organization.

"XVIII. That petitioner C. P. Myers, General Chairman, shall receive for his official services a salary of $250.00 per month or $3000.00 per year to be paid by the Order of Railway Conductors of the Louisiana and Arkansas Lines, and that if his services as General Chairman are terminated because of the refusal of the defendant to meet him in conference, which will ultimately result if the defendant is not enjoined, he will suffer damage in the loss of his salary to an amount far in excess of $3000.00.

"XIX. That under the provisions of section 3 of the Railway Labor Act, Boards of Adjustment may be created by agreement between any carrier or group of carriers, or the carriers as a whole, and its or their employees and the agreement shall provide, among other things, the manner in which certain disputes may be handled and shall provide further that disputes may be referred to the Adjustment Board upon failure to reach adjustment in conference, and that the defendant, the Louisiana and Arkansas Railway Company, has by agreement between it and a group of other carriers and a group of employees, including your petitioners, created an Adjustment Board under the provisions of this Act.

"XX. That under the Railway Labor Act employees who have grievances and claims in dispute in order to have same finally settled and adjusted, must necessarily go through the medium of conference, represented in such conference by their duly designated and authorized representative, who in case of the conductors, is your petitioner, C. P. Myers, and in failure of settlement of the disputes in conference by their representative, then their cases may be referred to the said Adjustment Board or the Board of Mediation, created by the Railway Labor Act, according to the nature of the dispute. Therefore, your petitioners suffer irreparable injury when their employer, the Louisiana and Arkansas Railway Company, refused to confer on their disputes with their duly accredited representative, General Chairman C. P. Myers, for they are then left without recourse under the Railway Labor Act for the conference is a necessary precedent to appeal to the Board of Adjustment or the Board of Mediation as the case may be, and they thereby lose their claims and rights without the benefit of representation and their right to appeal, which are irreparable injuries, for which there is no adequate remedy at law."

The prayer of the petition was for a rule upon the defendant to show cause why a preliminary injunction should not issue "restraining and prohibiting defendant from refusing to meet and confer" with Myers in his official capacity, "at his request from time to time on all disputes between it * * * and its conductors * * * and from influencing, interfering with or coercing its conductors * * * either directly or indirectly, in the manner in which they may choose to designate and authorize their representative or representatives" to meet those of the defendant, from interfering with their self-organization and, upon final trial, that the injunction be made permanent.

A rule was issued December 2, 1932, and made returnable on the 17th of the same month. At the hearing, defendant moved to dismiss the bill and, subject thereto, filed answer to the rule. The motion to dismiss was upon the ground that the court was without jurisdiction "as to the parties or for injunctive relief." Further, that the "Order of Railway Conductors invoked the services of the Board of Mediation on August 27, 1932, on the question of alleged refusal of defendants to meet and transact business with C. P. Myers," and that cause was still pending before the Board.

In its answer, defendant moved to strike most of the allegations of the bill on the ground of impertinency, and subject thereto

denied its allegations, except that it admitted plaintiff Myers retained his status as a conductor-employee of the defendant, that certain of its conductors belonged to the Order of Railway Conductors, "and defendant is informed that C. P. Myers was by them elected General Chairman of the General Committee." It also moved to strike the reference to other conductors as having joined in the bill, for the reason that their names and residences were not given. It specially pleaded that a contract had been made with the General Committee of the Order of Railway Conductors, on December 1, 1931, wherein said General Committee "was designated as a body to represent conductors in the making of contracts, rates, rules and working agreements and the interpretation thereof. * * * And defendant is not called on to meet the said C. P. Myers in lieu of said General Committee." It admitted the receipt of the letters from Myers of date September 23, 1932, and the genuineness of the replies attached to the petition, and that it had received the other letters attached thereto, which it did not answer for the reason that "there was no need for defendant to reply to same as the answers given by Mr. Paul Sipple explained the situation fully"; that if not satisfied therewith, Myers, if he properly represented the parties, had the right to take these cases up with the Southwestern Train Service Board of Adjustment for final action. It also denied that its failure to reply to the other letters constituted a refusal to meet and confer upon the claims. Paragraph XIII of the answer is as follows: "The allegations of Paragraph 13 are denied except as may be hereinafter admitted. Defendant shows that it sought a conference with the General Committee representing the Order of Railway Conductors, but said Committee refused to meet with defendant. The defendant has never sought to influence or coerce its employees in the designation of their representative, but the matter of representation between said Order and defendant is covered by the contract hereinabove referred to which specifically provides that the General Committee of the Order of Railway Conductors will represent the conductors in all matters arising out of the contract with defendant. That the Order of Railway Conductors has appealed the question of meeting Myers to the Board of Mediation, where it is now pending."

At the hearing, the matter was submitted upon the petition for preliminary injunction, with attached exhibits, the plea to the jurisdiction and answer, as well as affidavits filed by each side thereto. Thereafter, on January 3, 1933, petitioners filed a supplemental bill, in which article XIV of the original was amended as follows:

"That on many occasions the defendant, the Louisiana and Arkansas Railway Company, through its officers and agents has attempted to influence its conductors, your petitioners, in their self-organization, and in the choice of their representatives and the general conduct of their affairs and that it has even attempted to bring about friction among the members of the Order of Railway Conductors in the attempt to break down the organization, more particularly as follows:

"1. That on or about the latter part of August, 1931, the exact date not being known, Paul Sipple, Assistant to C. P. Couch, who at the time alleged was Executive Vice-President of the Louisiana and Arkansas Railway Company, said to Conductor T. H. Britain, a member of the Order of Railway Conductors and an employee of the defendant company and one of the petitioners herein, that C. P. Myers, Chairman of the Order of Railway Conductors of Louisiana and Arkansas Lines could do the men no good, and that the men were paying their money for nothing.'

"2. That Conductor H. P. Le Blanc, a loyal member of the Order of Railway Conductors, was discharged from the service of the Company on May 24, 1930, and that he made several attempts to be reinstated, and that in the latter part of July, 1932, he discussed the matter of his reinstatement with N. Johnson, Superintendent of the Louisiana and Arkansas Railway Company, at Alexandria, Louisiana; and that at that time the said Johnson acting in his official capacity, told him in substance that the company had nothing against him, and that he might be reinstated but not through the organization or Mr. Myers; and that Mr. Couch, President, would not settle anything with Mr. Myers.

"3. That on September 11, 1932, Mr. Paul Sipple, Assistant to C. P. Couch, President of the defendant company, told said H. P. Le Blanc in reference to his reinstatement in substance that he might be reinstated and go back to work for the company, but that it could not be arranged through Mr. Myers, the conductors' representative.

"4. That Trainmaster Norwood of the Louisiana and Arkansas Railway Company, shortly after his promotion to that position, told Conductor E. D. Couch, one of the petitioners herein, on Train No. 17 at Jamestown, Louisiana, that C. P. Myers, the representative of the conductors, could do nothing for the organization, and that the organ-

ization would profit by the selection of another representative and made some suggestion that it be a conductor in the regular ranks.

"5. That the officers of the defendant company have not accorded equal treatment and fairness to the loyal members of the Order of Railway Conductors in its employ as compared with that accorded to its conductors who are not members of the Order of Railway Conductors, which partial and favored treatment has been practised in the attempt to discourage the members of the Order in their organization, more particularly in this connection during the month of June, 1932 Conductor Pratt, a non-member, violated a slow order and rules resulting in a derailment and considerable damage, for which offense he was merely disciplined by the assessment of ten demerits; and Conductor Teegarden, a loyal member of the Order of Railway Conductors, lost two cancelled tickets on or about August 15, 1932, which were absolutely without value and which amounts to a very slight offense, for this he was discharged from the services of the company on or about October 12, 1932.

"6. That during the month of November, 1932, B. K. Lee, a conductor employed by the defendant company and who is not a member of the Order of Railway Conductors, was reprimanded by letter for failure to observe stop-over notation on a way bill; for a similar offense, committed November 17, 1931, Conductor J. D. Norris, a loyal member of the Order, was discharged from the services of the company, December 27, 1931."

The prayer of the original bill was reiterated.

On January 6, 1933, defendant again moved to dismiss both the original and supplemental bills for the reason set forth in its original motion and answer and upon the additional ground that the subject-matter of the complaint "involves a labor dispute within the terms of the Railway Labor Act and Labor Injunction Act," particularly section 8 of the latter (29 USCA § 108); that neither the original nor amended bills show that plaintiffs have made "every reasonable effort to settle the dispute in question by negotiation with the aid of governmental machinery or mediation or voluntary arbitration," but on the contrary, plaintiffs had invoked the services of the Board of Mediation as to this particular matter, which was still pending before it, and the latter "will not act until this suit is disposed of by the court"; and, finally, that by filing the supplemental bill plaintiffs "have waived their rights, if any they

had, to preliminary injunctive relief. * * *" It prayed that both bills be dismissed.

■ The plea to the jurisdiction cannot be maintained. The case involves an interpretation of and is based upon two federal statutes, to wit, the Railway Labor Act (45 USCA § 151 et seq.) and the Labor Injunction Law (29 USCA § 101 et seq.), which gives the court jurisdiction without regard to the residence of the parties. Section 24, Judicial Code (28 USCA § 41).

■ I think that complainants have the right to appear through their general chairman in the manner adopted in this case.

■■ The objects of the suit, as I understand them, are twofold: First, to enjoin interference by defendant with the selection by the Order of Railway Conductors of their representative through coercion and discrimination between its members and those not belonging to the order; and, second, to compel the defendant, through its proper officers, to meet and confer with Myers as the representative of the conductors upon matters affecting their relations with the defendant. The first is a proper subject for consideration under the application for a preliminary prohibitive injunction; but the latter involves a claim to relief through a writ of mandatory injunction compelling defendant to do certain things which should not be entertained except in extreme cases until a hearing upon the merits, in which witnesses can be sworn with the right of cross-examination, and then only after a clear showing that plaintiffs are entitled to the relief prayed for. C. J. vol. 24, verbo Injunctions. A decision of the question of the right to compel defendant to meet Myers as the representative of the Order of Railway Conductors will, therefore, be reserved for the final hearing. In fact, this is the only issue to be determined save the one of interference and coercion of the plaintiffs in the selection of their representative, which latter question will now be disposed of in so far as the right to preliminary injunction is concerned.

I think the proofs submitted show that the defendant and its officers are dissatisfied with Myers and are not willing to meet or deal with him as the representative of the Railway Conductors. This is in effect admitted in the pleadings by the denial of his right to act alone and the insistence that defendant be allowed to confer with the General Committee as a body. It also appears from the letter of the president of defendant, C. P. Couch, addressed to Myers, dated August 2,

1932, offered in evidence, and also quoted in Couch's affidavit, as follows:

"August 2, 1932.

"Mr. C. P. Myers, General Chairman,

"Order of Railway Conductors,

"Shreveport, Louisiana.

"Dear Sir:

"I have heretofore informally discussed with you, and it is a matter of common knowledge, that the relationship now existing between the Company and the representative of the Conductors is unsatisfactory. I now desire to discuss this matter in conference with you and each of the members of your committee in order that the interests of both the employees and the Company will be benefited to the mutual good of all concerned. I, therefore, request that you arrange to convene your committee at the earliest convenient time for a meeting with me in order that this matter may be handled.

"Please acknowledge receipt and advise the date you will convene your committee and I will arrange to meet it at that time.

"The nature of this matter is such that I urge you give it immediate attention.

"Yours truly,

"[Signed]    C. P. Couch,

"President."

I think it also true that the defendant has endeavored to persuade at least some of the members of this order to select another general chairman in the place of Myers, with promises that they would receive more consideration and better treatment if they selected some one satisfactory to the company. It is also reasonably established that the defendant has discriminated in its disciplinary measures as between those who were and were not members of the order, dismissing some of the former for breaches of duty less serious than those for which it inflicted minor penalties on the latter. These acts are revealed in the affidavits of J. A. Phillips, dated December 3, 1932; H. P. Le Blanc, December 12, 1932; and E. D. Couch, December 13, 1932, which are met by the officers of the defendant by simple denials, not of these specific acts, but of efforts to influence or coerce its said employees. I think it reasonably shown that the defendant has attempted to compel the Order of Railway Conductors to replace Myers as their general chairman, whom they have the right to select without interference, influence, or coercion on the part of the defendant. I find the facts to be as recited in these affidavits. The matter was submitted upon the pleadings and affidavits after hearing without either side requiring the presence or right to cross-examine the deponents.

I further find it is reasonably probable that the defendant will continue to endeavor to influence and coerce its said employees in the matter of their representation as general chairman by C. P. Myers; that plaintiffs have a property right in the selection, uninfluenced or coerced, of their representative, which will cause irreparable injury if not restrained; that greater injury will be inflicted upon the complainants by denial of relief than by granting it; that complainants have no adequate remedy at law; and that it is not a matter with which the local public officials can deal. See Texas & New Orleans Railroad Co., et al. v. Brotherhood of Railway & Steamship Clerks et al., 281 U. S. 548, 50 S. Ct. 427, 74 L. Ed. 1034.

The complainants will be granted a preliminary injunction upon the execution of bond with proper surety in the sum of $1,000, conditioned according to law, enjoining and restraining the defendant, its officers and agents, from interfering with, influencing, or coercing the complainants in their self-organization or designation of their representative as general chairman of the Order of Railway Conductors for the Louisiana & Arkansas Lines.

Proper decree should be presented.